Petitioner: Luis Enrique Garibay, Reg. No. 09199-041

Address: United States Penitentiary Atwater

1 Federal Way/P.O. Box 019001

Atwater, California 95301

In the United States District Court

for the District of Arizona

| | |
|---|---|
| Luis Enrique Garibay, | ) Civ.Cs.No. 11-CV-13-RCC |
| Petitioner-Defendant, | ) Crim.Cs.No. CR05-1419-TUC-RCC |
| | ) MEMORANDUM OF POINTS AND |
| -vs- | ) AUTHORITIES IN SUPPORT OF MOTION |
| | ) TO VACATE, SET ASIDE, OR CORRECT |
| UNITED STATES OF AMERICA, | ) SENTENCE UNDER  28 U.S.C. § 2255 |
| Respondent-Plaintiff. | ) |
| | ) |

COMES NOW Petitioner, Luis Enrique Garibay,
("Garibay"), a pauper in federal custody, and in pro se
capacity, respectfully moves this honorable Court for an Order
to Vacate, Set Aside, or Correct Judgment and Sentence
pursuant to Title 28 U.S.C. § 2255.

Petitioner's judgment and sentence are void and also
voidable due to infringements of the rights guaranteed by the
Fifth and Sixth Amendments to the United States Constitution.
A Memorandum of Points and Authorities, appended herein,
explicates each constitutional violation, and is incorporated
herein by reference.

Several of the aforementioned constitutional violations involve proof of facts which exist outside of the record. Additionally, certain factual matters contained within the record require additional development at a hearing. This motion is supported by evidentiary documents attached hereto.

Lastly, Petitioner submits that this Court should hold Petitioner's pleadings, however inartfully drafted or pleaded, "to less stringent standards than formal pleadings drafted by lawyers...." Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

## JURISDICTION

Petitioner's petition for "writ of certiorari" was denied by the Supreme Court of the United States on January 11, 2010. This motion is timely under 28 U.S.C. § 2255(1), as it is being filed within the one-year time grace period to file a Title 28 U.S.C. Section 2255 Motion.

## PROCEDURAL HISTORY

Petitioner, Luis Enrique Garibay, was arrested at his sister's house by a US Marshal's task force on June 7, 2005, for violating the terms of his supervised release. SHT: 10-20. Agents reentered the house and discovered a pistol near a clip of ammunition. SHT: 21-27. On July 20, 2005, and indictment was filed charging Garibay with Felon in Possession of a Firearm with an Armed Career Criminal enhancement under 18 U.S.C. § 922(g)(1) and 924(e)(1). CR: 1. He was also charged with two counts of violation supervised release under separate CR numbers.

On July 10, 2007, the Defense moved to suppress the gun and clip on grounds they were the fruit of an unconstitutional search and seizure. CR: 36. Following a hearing, CR: 41, and additional briefing, CR: 42; SHT: 11-13, the District Court denied the Motion to Suppress on August 18, 2006. CR: 55.

The case preceded to a jury trial on August 29, 2006. CR: 68-9. The jury returned a verdict of guilty on August 30, 2006. CR: 69.

On October 12, 2007, the case proceeded to sentencing. CR: 97. The District Court found the Government had proved at least three Armed Career Criminal predicates and sentenced Mr. Garibay to 235 months in custody with credit for time served, and 60 months of supervised release. CR: 98.

## STATEMENT OF FACTS

On June 7, 2005, United States Marshals entered the home of Roxanna Garibay, Defendant's sister, looking for Mr. Garibay on a tip from a confidential informant. SHT: 10-20. They were in possession of an arrest warrant issued after his U.S. Probation officer petitioned the Court to revoke his supervised release. SHT: 7-8. Mr. Garibay, an overnight guest at his sister's house, was then sleeping in a back bedroom. SHT: 17-28. Also in the room with Mr. Garibay was Jessica Rodriguez, his then-girlfriend. SHT: 17-18.

As the Marshal's entered the house, they detained an individual just inside the doorway and brought him outside. SHT: 15-16. (He was later determined to be illegally in the country and was turned over to Border Patrol.) SHT: 27-28.

They then proceeded to sweep the house for more people. SHT: 16-17. The only other people in the home were Mr. Garibay and Ms. Rodriguez, whom the Marshals found still in bed in a bedroom of the house. SHT: 17. Garibay and Rodriguez, surrendered to the outside porch area and the entire arrest team left the house. SHT: 19, 31. No gun or ammunition was seen during the arrest. SHT: 34.

Outside, the Marshals began to question Garibay and Rodriguez. SHT: 20-21, 32. According to Deputy Graham, Ms. Rodriguez admitted to knowing where a gun was located in the house. SHT: 32. The Marshals had her describe the location of the gun, then re-entered the house to look for it. SHT: 21. Deputy Marshal Graham testified at the Evidentiary Hearing that he found a gun in a pile of clothing near the foot of the bed in the room where they had previously arrested Rodriguez and Garibay. SHT: 23-22. At no time did he see Garibay possess the gun or ammunition. SHT: 34.

Deputy Graham testified that there were six to eight armed officers present to effect the arrest and secure the scene, and that they had the residence secure before re-entering to begin the search for the gun following Ms. Rodriguez's tip. SHT: 28-29, 31.

---

1. "SHT" denotes Suppression Hearing Transcript dated July 18, 2006.

2. "TT" denotes Trial Transcript dated August 29, 2006.

3. "AFF" denotes Petitioner's Affidavit.

4. "ER" denotes Excerpts of Record.

5. "CR" denotes Clerks Record.

TABLE OF CONTENTS                    Page

JURISDICTION...............................................ii

PROCEDURAL HISTORY.........................................ii

STATEMENT OF FACTS........................................iii

MEMORANDUM OF POINTS AND AUTHORITIES........................1

   I. PRELIMINARY STATEMENT..................................1

  II. CAUSE AND PREJUDICE....................................1

III. POST-CONVICTION EVIDENCE RELEVANT TO

      CLAIMS FOR RELIEF.....................................2

  IV. GROUNDS FOR RELIEF.....................................3

CONCLUSION.................................................30

RELIEF REQUESTED...........................................31

VERIFICATION...............................................32

CERTIFICATE OF SERVICE.....................................33

TABLE OF AUTHORITIES                    Page

Bedolla Garcia v. Runnels, No. C 02-5480-CRB, 2004 U.S.

Dist. LEXIS 11990, 2004 WL 1465696, *1-*3 (N.D. Cal. June

24, 2004), aff'd, 143 Fed. Appx. 38 (9th Cir. 2005).......29

Bonin v. Vasquez, 807 F.Supp. 589 (1992 U.S. Dist. LEXIS

17381: Central District of California).....................23

Brady v. Maryland, 373 U.S. at 87..........................18

Brown v. Artuz, 124 F.3d 73 (2nd Cir. 1997)................12

Campos v. United States, 930 F.Supp. 787,

789 (S.D.N.Y. 1996)........................................12

Edwards, 897 F.2d at 446...................................13

Giglio v. United States, 405 U.S. 150, 154,

31 L.Ed.2d 104, 92 S.Ct. 763 (1972)........................17

Haines v. Kerner, 30 L.Ed.2d 652 (1972)....................ii

Hayes v. Brown, 399 F.3d 972, 980 (9th Cir. 2005).........26

Housotn v. Lack, 101 L.Ed.2d 245 (1988)...................33

In re Jimenez, __ Cal.Rptr.3d __, 2010 WL 3385999

(Cal.)(Cal. S.Ct. No. S167100, (8/30/10)

{Slip Opn. Page 5}.........................................19

Jaimes v. United States, 2007 U.S. Dist.

LEXIS 67557 (Semptember 12, 2007)..........................8

Kates v. United States, 930 F.Supp. 189,

192 (E.D. Pa. 1996)........................................9

Killian v. Poole, 282 F.3d 1204, 1209 (9th Cir. 2002)......26

Kyles v. Whitley, 514 U.S. 419, 434, 115

S.Ct. 1555, 131 L.Ed.2d 490 (1995).........................26

Martinez v. Felker, Cv. No. 04-2960-MMM, 2009 U.S. Dist.LEXIS

11139, 2009 WL 393166, *15 (C.D. Cal., Feb 13, 2009).......29

Martinez, 883 F.2d at 756.................................13

Nuñez v. Mueller, 350 F.3d 1045, 1051 (9th Cir. 2003).......3

Pham v. United States, 317 F.3d 178, 183 (2nd Cir. 2003)....9

Purdy v. United States, 208 F.3d 41, 45 (2nd Cir. 2000).....8

Risher v. United States, 992 F.2d 982 (9th Cir. 1993)......11

Rock v. Arkansas, 483 U.S. 44, 51-53 (1987)...............12

Spivey v. Zant, 683 F.2d 881, 885 (5th Cir. 1982).........19

Strickland v. Washington, 466 U.S. 668, 104 S.Ct.
2052, 80 L.Ed.2d 674 (1984)........................in passim

Strickler v. Greene, 527 U.S. 263, 281-82, 119
S.Ct. 1936, 144 L.Ed.2d 286 (1999)........................16

Tennison v. City and County of San Francisco,
2006 U.S. Dist. Lexis 25202, 2006 WL 733470
at *26 (N.D. Cal., March 22, 2006)........................16

Turner v. Calderon, 281 F.3d 851, 879 (9th Cir. 2002).......5

United States v. Augurs, 427 U.S. 97, 103,
96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)......................26

United States v. Bagley, 473 U.S. 667, 87 L.Ed.2d
481, 105 S.Ct. 3375 (1985)................................18

United States v. Brumel-Alvarez, 991 F.2d 1452,
1461 (9th Cir. 1992)......................................17

United States v. Clevenger, 733 F.2d 1356,
1359 (9th Cir. 1984)......................................26

Untied States v. Day, 285 F.3d 1167, 1172
(9th Cir. 2002)............................................5

United States v. Endicott, 869 F.2d 452, 455
(9th Cir. 1989)...........................................23

United States v. Frady, 456 U.S. 152, 168,
102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982)................1

United States v. Joelson, 7 F.3d 174, 177 (9th Cir.),
cert. denied, 510 U.S. 10190 (1993)........................12

United States v. Meling, 47 F.3d 1546, 1554-55
(9th Cir. 1995)...........................................5

United States v. Reeves, 210 F.3d 1041, 1044
(9th Cir. 2000)...........................................4

United States v. Reynoso-Ulloa, 548 F.2d 1329, 1340
(9th Cir. 1977) cert. denied 436 U.S. 926,
56 L.Ed.2d 769, 98 S.Ct. 2820............................23

United States v. Tavares, 100 F.3d 995 (D.C. Cir. 1996),
cert. denied, 520 U.S. 1160 (1997)........................13

United States v. Teague, 506 U.S. 842 (1992)..............13

United Sates v. Wade, 388 U.S. 218 (1967).................4

Codes, Statutes, Rules and other References

Career Offender...................................in passsim

Case No. 07-10507; Ninth Circuit March 17, 2009,

Memorandum at Page 3-4....................................17

Federal Rules of Civil Procedure Rule 26-37...............31

Federal Rules of Civil Procedure Rule 15(a-d)..............2

Title 18 U.S.C. § 922(g)(1)...............................ii

Title 18 U.S.C. § 924(e)(1)...............................ii

Title 28 U.S.C. § 1746....................................33

Title 28 U.S.C. § 2255....................................ii

Title 28 U.S.C. § 2255(1).................................ii

Title 28 U.S.C. § 2255(b).................................15

Rules Governing § 2255 Proceedings Rule 5.................31

U.S. Const. Amend. V......................................16

U.S. Const. Amend. VI.............................in passim

MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Petitioner, Luis Enrique Garibay, is serving 235 months for being a Felon in Possession of a Firearm with an Armed Career Criminal enhancement under 18 U.S.C. § 922(g)(1) and 924(e)(1). The Ninth Circuit Court of Appeals denied Mr. Garibay's direct appeal, and the Supreme Court of the United States declined to entertain Mr. Garibay's "petition for writ of certiorari." Mr. Garibay's appeals to the higher Courts was reviewed with an underdeveloped record, and without taking in account the out-of-courtroom events that transpired during pretrial, trial, and post-trial phases. Mr. Garibay timely raises his claims for relief under Title 28 U.S.C. § 2255.

## II. CAUSE AND PREJUDICE

In United States v. Frady, 456 U.S. 152, 168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982), the Supreme Court of the United States held that where a criminal defendant fails to make allegations of error at trial or on direct appeal he must demonstrate "(1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." Id.

Appended to Mr. Garibay's § 2255 Motion is an Affidavit containing first-rate knowledge of detailed events the transpired outside the courtroom in Mr. Garibay's case. This honorable Court will find specific arguments which support Mr. Garibay's assertion that his claims are not procedurally barred and that he meets the "cause and prejudice" standard.

1

At the core of Mr. Garibay's arguments, however, this honorable Court will find that he received ineffective assistance of trial counsel, ineffective assistance of appellate counsel and most significantly, that Mr. Garibay was deprived of his due process rights during pretrial and trial phases.

III. POST-CONVICTION EVIDENCE RELEVANT TO CLAIMS FOR RELIEF

Mr. Garibay submits that the post-conviction evidence relevant to claims for relief are stated, herein, and an appended affidavit, and will be amended/supplemented pursuant to F.R.Civ.P. Rule 15(a-d). Mr. Garibay submits that numerous out of court statements and events do not appear on the record. Petitioner further submits that documents, audio recording evidence and other evidence, not disclosed by the prosecution, will be presented to this honorable Court.

Moreover, in Mr. Garibay's case, perjury as well the misrepresentation of facts are several leading factors that resulted in Mr. Garibay's conviction, this is Mr. Garibay's opportunity to demonstrate to the honorable Court that had perjury or ineffective assistance of counsel not occurred, Mr. Garibay's proceedings would have had a different result.

Finally, pivotal to Mr. Garibay's decision-making process was attorney Cheshire's advice and information to Mr. Garibay during pretrial and trial stages. Appended, herein, is Mr. Garibay's affidavit with a reiteration of memorialized facts relevant to the court record, and, in addition, out-of-courtroom and record facts and events on how attorney Cheshire's defective advice "prejudiced" Mr. Garibay's decision-making process.

### IV. GROUNDS FOR RELIEF

GROUND ONE:      THE INEFFECTIVE ASSISTANCE OF COUNSEL DURING
THE PRETRIAL, TRIAL, AND POST AND APPELLATE PHASES VIOLATED
MR. GARIBAY'S FIFTH AMENDMENT DUE PROCESS RIGHT, AND SIXTH
AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE
U.S. CONSTITUTION

The right to effective assistance of counsel is found
in the Sixth Amendment to the United States Constitution. The
Sixth Amendment states that "[i]n all criminal prosecutions,
the accused shall enjoy the right...to have the Assistance of
Counsel for his defence." U.S. Const. Amend. VI. This right
was comprehensively discussed in Strickland v. Washington, 466
U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In Strickland, supra, the Supreme Court set forth the
two-prong test for establishing ineffective assistance of
counsel. To prevail on an ineffective assistance claim, a
convicted defendant must show: (1) that counsel's
representation fell below an objective standard of
reasonableness, and (2) that there is a reasonable probability
that, but for counsel's unprofessional errors, the result of
the proceeding would have been different. Strickland at 687-
88. There is a strong presumption that counsel's conduct falls
within the wide range of reasonable assistance. Strickland, at
689-90.

The Ninth Circuit Court of Appeal has stated, in Nuñez
v. Mueller, 350 F.3d 1045, 1051 (9th Cir. 2003):

> "Strickland v. Washington -the most sensible
> place to begin evaluating any claim for
> ineffective assistance of counsel-teaches

the benchmark for assessing such claims
must be "'whether counsel's conduct so
undermined the proper functioning of the
adversarial process that the trial cannot
be relied on as having produced a just
result.'" (citation omitted)

Moreover, the Constitutional guarantee of counsel
under the Sixth Amendment has been construed to include four
rights: the right to counsel, the right to effective
assistance of counsel, the right to a preparation period
sufficient to ensure minimal level of quality of counsel, and
the right to be represented by counsel of one's own choice.

After a defendant's Sixth Amendment right to counsel
attaches, he has a right to the advice of counsel at any
stage of the prosecution, formal or informal, in court or out,
where counsel's absence might derogate from the accused's righ
t to a fair trial. United Sates v. Wade, 388 U.S. 218 (1967).

This case begins with "information from a confidential
informant about the whereabouts of Luis Enrique Garibay." SHT
6. In this case, the Government failed to produce to the
defense evidence to permit a finding that the informant was
free from any convictions involving dishonesty; such
convictions would have been required to be included-and
reliability adequately established in an affidavit-in order to
provide probable cause needed for a search warrant. See,
United States v. Reeves, 210 F.3d 1041, 1044 (9th Cir. 2000).
"[A]n informant's criminal past involving dishonesty is fatal
to the reliability of the informant's information, and his/her
testimony cannot support probable cause." Id. (citing United

4

States v. Meling, 47 F.3d 1546, 1554-55 (9th Cir. 1995)).

After receiving the information, one deputy marshal "checked to see if there were any active warrants pending for his arrest." SHT 7. "At the time there were no active warrants." SHT 7. The Marhsals Office later learned that there had been petitions filed for Mr. Garibay's arrest, and were just waiting "for the judge to review the petition and sign off on the warrant." SHT 7. The deputies armed themselves with "two warrants for supervised release violation." SHT 11. On June 7, 2005, the Marshals arrested Mr. Garibay. TT 51.

Because this honorable Court is familiar with a general and broad idea of the facts leading to the arrest of Mr. Garibay, Mr. Garibay will adopt "on the record facts" except as stated otherwise, and refer to those supported by the record, affidavit, or Mr. Garibay's "first-rate" knowledge.

1.1.    Counsel Was Ineffective For Rendering Defective and Erroneous Advice to Mr. Garibay.

Mr. Garibay argues that ineffective assistance of counsel occurred when counsel's advice was rendered "so incorrect and so insufficient that it undermined [Mr. Garibay's] ability to make an intelligent decision about whether to accept the [plea] offer." Turner v. Calderon, 281 F.3d 851, 879 (9th Cir. 2002); accord Untied States v. Day, 285 F.3d 1167, 1172 (9th Cir. 2002) ("An attorney's incompetent advice resulting in a defendant's rejection of a plea offer can constitute ineffective assistance of counsel.").

Since the outset of Mr. Garibay's case, Counsel was relying on faulty facts and a misinterpretation of applicable law to Mr. Garibay's specific situation, it was not possible for Counsel to render effective advice if he was not aware that Mr. Garibay was a Career Offender, and would be subject to enhancements that would yield a stricter sentence by the honorable Court if found guilty at trial. Counsel informed Mr. Garibay about the prosecution's 12 year plea bargain offer, and further indicated to Mr. Garibay that the sentence would carry a maximum of 15 years and would not exceed 15 years. On counsel's advise Mr. Garibay assumed that the risk involved would be a difference of less than 3 years, if proceeding to trial and were to be found guilty. Attorney Cheshire indicated that the sentence exposure would be of "NOT MORE" than fifteen (15) years, under this advice Mr. Garibay proceeded to trial.

Had attorney Cheshire competently advised Mr. Garibay about the applicable minimum 15 year sentence under the Career Offender statute, Mr. Garibay would have not proceeded to trial.

1.2.    Counsel Was Ineffective For His Failure to inform Mr. Garibay of the applicability of the Sentencing Guidelines.

The purpose of the Sentencing Guidelines is to provide a structure for evaluating the fairness and appropriateness of the sentence for an individual offender.

Mr. Garibay submits that attorney Cheshire did not inform Mr. Garibay of the applicability of the Sentencing Guidelines. Had attorney Cheshire made known this information

6

to Mr. Garibay, Mr. Garibay would have been able to competently discharge an intelligent decision about whether to accept the plea offer or proceed to trial. Not knowing his position under the Career Offender, and enhancements under the sentencing guidelines, Mr. Garibay proceeded to trial. Here, it cannot be said that Mr. Garibay made an intelligent decision in proceeding to trial. Mr. Garibay was placed in a position, by counsel, where he had to make a decision without the full knowledge of the facts and possible consequences.

Mr. Garibay argues that his counsel's failure to advise him, before Mr. Garibay decided to proceed to trial, about the potential applicability of the Sentencing Guidelines, if found guilty at trial, constituted ineffective assistance of counsel in violation of the Sixth Amendment. Mr. Garibay submits that a competent lawyer would have warned Mr. Garibay of the significant risk that he would be sentenced under the career offender provisions of the Guidelines. Mr. Garibay submits that a lawyer who fails to so advise his client cannot be said to have been functioning as counsel within the meaning of the Sixth Amendment.

If Garibay demonstrates that his counsel failed to advise him as required, he must also demonstrate that he was prejudiced by his counsel's deficient performance by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Whether Mr. Garibay can show that the advice of effective counsel would have caused him to enter a plea of

guilty is a highly fact specific question, that would be best considered by this honorable Court at an evidentiary hearing, provided that Mr. Garibay is allowed to factually develop his claims via of an Order directing Mr. Garibay to supplement his pleading with detail, (issue an Order directing Mr. Garibay to "file a supplemental memorandum" or an Order directing Mr. Gaibay "to file a supplemental brief explaining the...gorunds." Seef, Jaimes v. United States, 2007 U.S. Dist. LEXIS 67557 (Semptember 12, 2007).), or an Order by this honorable Court Granting an evidentiary hearing where Mr. Garibay can factually develop his timely claims with live testimony and additional of the record evidence.

     1.3.   Counsel Was Ineffective For His Failure to Apprise Mr. Garibay of the Available Options and Possible Consequences.

    Mr. Garibay contends that trial counsel provided ineffective assistance by failing to apprise Mr. Garibay of the available options and possible consequences via of the strengths and weaknesses of the case applicable to him. Mr. Garibay argues that during a plea process, counsel must "usually inform the defendant of the strengths and the weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed"). See Purdy v. United States, 208 F.3d 41, 45 (2nd Cir. 2000).

    Several Courts have recognized that a defendant's protestations of innocence do not totally foreclose a court from determining that a plea bargain would have been acceptable if properly presented. Thus, in Pham v. United

States, 317 F.3d 178, 183 (2nd Cir. 2003), the Court of
Appeals for the Second Circuit noted that "where the disparity
in potential sentences is great, a finder of fact may infer
that defendants who profess their innocence will still
consider a plea." See also Kates v. United States, 930 F.Supp.
189, 192 (E.D. Pa. 1996) ("utterly intransigent" defendants of
ten "cave in when confronted with the ugly reality of what
probably would happen to [them] if [they] did not" plead).
Similarly, this honorable Court should find that had Mr.
Garibay been aware of the "ugly reality" of an additional
nearly seven (7) years in prison, he would have accepted the
plea bargain.

Had attorney Cheshire informed Mr. Garibay of the
strengths and the weaknesses of the case against him, as well
as the alternative sentences to which he will most likely be
exposed, Mr. Garibay would have accepted the government's
twelve year plea bargain.

1.4.    Counsel Was Ineffective For His Failure to
Inform Mr. Garibay About the Congressional Mandates of
Mandatory Minimums.

Counsel never explained the sentencing process; how
the guidelines work; that the guidelines were advisor; the
adjustments could be made to the sentencing guidelines,
including loss; and how adjustment in guideline levels
correspond with additional months of incarceration. Counsel
also failed to advise Mr. Garibay that he could potentially
receive a decrease of two or three levels for acceptance of
responsibility if he pled prior to trial. In sum, counsel

advised Mr. Garibay that he would go to prison for no more than 15 years, counsel failed to inform that Mr. Garibay would be looking at more time if the Court applied the enhancements and minimum mandatory under the Career Offender as mandated by Congress.

Attorney Cheshire's failure to apprise Mr. Garibay about the Congressional Mandates of mandatory minimums was ineffective assistance of counsel.

Mr. Garibay argues that is not clear whether counsel relied upon the wrong law, or no law at all, what is clear is that counsel Cheshire provided substandard advice regarding Mr. Garibay's sentencing exposure pursuant to Congress' mandatory minimums.

Moreover, Mr. Garibay asserts he was never advised of being a Career Offender. Mr. Garibay asserts that counsel assured Mr. Garibay that his potential sentence would yield a sentence of not more than fifteen years. Mr. Garibay avers that had he known the actual risks involved and sentencing exposure under the Congressional Mandates of Mandatory Minimums, he would not have gone to trial, but would have taken the standing plea offer of twelve years and not risked the possibility of being sentenced to at minimum fifteen, twenty or more years as outlined by Congress.

1.5.   Counsel Was Ineffective For His Failure to Apprise Mr. Garibay of the Mandatory Sentence Under the Career Offender Provisions.

Mr. Garibay argues that when a lawyer fails to "advise his client that he would be sentenced under the career

offender provisions of the guideline, he [is] not provid[ing] effective assistance of counsel within the meaning of the Sixth Amendment." See, Risher v. United States, 992 F.2d 982 (9th Cir. 1993). In Risher, the trial court rejected the claim and denied his petition for habeas corpus under 28 U.S.C. § 2255, and defendant appealed. The court reversed and remanded to the trial court for a determination of whether defendant's counsel failed to advise him of the potential applicability of the career offender provisions of the guidelines, and, if that failure was established, for a determination of whether it was prejudicial. The court further held that defendant's counsel's failure to warn him before he entered his guilty plea of the risk he might be sentenced under the guidelines fell below the level of professional competence required because a competent lawyer would have warned defendant of the significant risk that he would be sentenced under the career offender provisions of the guidelines.

In the present case, Attorney Cheshire indicated to Mr. Garibay about the prosecution's 12 year plea bargain offer, and further indicated to Mr. Garibay that the sentence would carry a maximum of 15 years and would not exceed 15 years. On counsel's advise Mr. Garibay assumed that the risk involved would be a difference of less than 3 years, if proceeding to trial and were to be found guilty. Attorney Cheshire indicated that the sentence exposure would be of "NOT MORE" than fifteen (15) years, under this advice Mr. Garibay proceeded to trial. Had attorney Cheshire competently informed Mr. Garibay about his Career Offender status and its penalties, Mr. Garibay would have not proceeded to trial.

1.6.    Counsel Was Ineffective For His Failure
Properly Advise and Override Mr. Garibay's Option to Testify
at Trial in His Own Defense.

A defendant's right to testify in his own defense is
personal and may not be waived by his attorney over the
defendant's opposition. Brown v. Artuz, 124 F.3d 73 (2nd Cir.
1997); Campos v. United States, 930 F.Supp. 787, 789 (S.D.N.Y.
1996). Trial counsel's duty of effective assistance includes
the responsibility to advise the defendant concerning the
exercise of this constitutional right. Brown, 124 F.3d at 79.
"[A]ny claim by [a] defendant that defense counsel has not
discharged this responsibility--either by failing to inform
the defendant of the right to testify or by overriding the
defendant's desire to testify--must satisfy the two-prong test
established in Strickland v. Washington, 466 U.S. 668, 104
S.Ct. 2052, 80 L.Ed.2d 674 (1984), for assessing whether
counsel has rendered constitutionally ineffective assistance":
objectively unreasonably performance and prejudice. Id.

The thrust behind Mr. Garibay's claim is whether
counsel Cheshire competently discharged his responsibility in
properly advising Mr. Garibay about his sole right to exercise
his constitutional right to testify in his own defense and at
his own trial.

Here, an accused's right to testify is a fundamental
Constitutional right protected by both the Fifth and Sixth
Amendment. Rock v. Arkansas, 483 U.S. 44, 51-53 (1987); United
States v. Joelson, 7 F.3d 174, 177 (9th Cir.), cert. denied,
510 U.S. 10190 (1993). The right to testify in one own's

defense is personal to the defendant. Joelson, 7 F.3d at 177.
However, a defendant is ordinarily presumed to assent to his
attorney's tactical decision not to have him testify. Edwards,
897 F.2d at 446-47. The trial court "'has no duty to advise
the defendant of his right to testify, nor is the court
required to ensure that on-the-record waiver has occurred.'"
Edwards at 446 (quoting Martinez, 883 F.2d at 760). A waiver
of the right to testify is generally presumed from the
defendant's failure to testify or notify the court of his
desire to do so. Joelson, at 177.

    1.6.a.  Mr. Garibay's Waiver of His Right to Testify
Was Not Knowing.

    A defendant's relinquishment of the right to testify
must be knowing and intentional. Joelson, 7 F.3d at 177;
Edwards, 897 F.2d at 446; Martinez, 883 F.2d at 756. Here,
counsel Cheshire did not inform Mr. Garibay that the right to
testify or not to testify is personal to the defendant and can
be waived only by the defendant. United States v. Teague, 506
U.S. 842 (1992). The Eleventh Circuit held in Teague that
defense counsel owes a duty to advise "the defendant of his
right to testify or not to testify, the strategic implications
of each choice, and that it is ultimately for the defendant
himself to decide." Teague, 953 F.2d at 1553. See, United
States v. Tavares, 100 F.3d 995 (D.C. Cir. 1996), cert.
denied, 520 U.S. 1160 (1997).

    Mr. Garibay avers that counsel Cheshire failed to
carry out this duty, that this failure constituted ineffective
assistance of counsel, and that as a result of counsel
Cheshire's error, Mr. Garibay was deemed to have waived his

right to testify, eventhough he did not do so knowingly, intelligently, and voluntarily.

The Eleventh Circuit's Teague decision explicitly holds that trial counsel does have a Strickland duty to advise "the defendant of his right to testify or not testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." Teague, 953 F.2d at 1544.

The Supreme Court in Rock v. Arkansas, 483 U.S. at 52, 107 S.Ct. 2704, held that "the most important witness for the defense in many criminal cases is the defendant himself. There is no justification today for a rule that denies an accused the opportunity to offer his own testimony." Id.

Mr. Garibay argues that taking just one side of the story or one part of the testimony without illustrating the contradictions in the testimony is not an accurate reflection of the facts of the case or how they were illustrated at trial or at the suppression hearing, counsel Cheshire overrode Mr. Garibay's decision to testify via of his failure to prepare and apprise Mr. Garibay of the advantages and disadvantages of testifying at trial. Counsel simply failed to indicate that to Mr. Garibay that the decision to testify rested on him and only on him. This Mr. Garibay did not know, as a result Mr. Garibay was prejudiced by not being able to tell the jury his side of the facts.

Mr. Garibay submits that an evidentiary hearing is needed to evaluate the credibility gap between Jessica Rodriguez, Agent Graham, counsel Cheshire and Mr. Garibay. Mr.

Garibay asserts that the introduction of his personal facts will unequivocally and vehemently elicit self-serving statements from Jessica Rodriguez, Agent Graham, and counsel Cheshire. Mr. Garibay argues that self serving statements on both sides should bear no particular indicia of reliability and treated as highly dubious. In his appended affidavit, Mr. Garibay presents examples of the "infirmities" in Agent Graham and Jessica Rodriguez's trial testimony, and further outlines counsel Cheshire's ineffective assistance.

Mr. Garibay has demonstrated legitimate factual disput es requiring an evidentiary hearing. As stated under 28 U.S.C. § 2255(b), the Court must grant an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Thus, an evidentiary hearing is necessary where "the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." Leonti, 326 F.3d at 1116.

Taking just one side of the story or one part of the testimony without illustrating the contradictions in the testimony is not an accurate reflection of the facts of the case or how they were illustrated at trial or at the suppression hearing.

Mr. Garibay argues that he has made specific factual allegations that, if found to be true by this honorable Court, state a claim on which relief could be granted.

For the reasons stated above, Mr. Garibay respectfully requests this honorable Vacate Mr. Garibay's conviction, or in the alternative Grant an evidentiary hearing.

GROUND TWO:       GOVERNMENT'S FAILURE TO DISCLOSE EVIDENCE
UNDER GIGLIO AND BRADY VIOLATED MR. GARIBAY'S FIFTH AMENDMENT
RIGHT TO DUE PROCESS AND SIXTH AMENDMENT RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL UNDER THE U.S. CONSTITUTION

In the criminal context, "'[t]here are three
components of a true Brady violation: [t]he evidence at issue
must be favorable to the accused, either because it is
exculpatory or because it is impeaching; that evidence must
have been suppressed by the State, either willfully or
inadvertently; and prejudice must have ensued.'" Tennison v.
City and County of San Francisco, 2006 U.S. Dist. Lexis 25202,
2006 WL 733470 at *26 (N.D. Cal., March 22, 2006) ("Tennnison
I") (quoting Strickler v. Greene, 527 U.S. 263, 281-82, 119
S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

In this case, the Government failed to produce
evidence to permit a finding that the informant was free from
any convictions involving dishonesty; such convictions would
have been required to be included-and reliability adequately
established in an affidavit-in order to provide the probable
cause needed for a search warrant. Id. citing United States v.
Reeves, 210 F.3d 1041, 1044 (9th Cir. 2000). "[A]n informant's
criminal past involving dishonesty is fatal to the reliability
of the informant's information, and his/her testimony cannot
support probable cause." Id. (United States v. Meling, 47 F.3d
1456, 1455 (9th Cir. 1995)). In this case, the required
disclosure was never made, and therefore the officers (acting
on a tip alone) lacked probable cause to believe Mr. Garibay
was present at his sister when the arrest was made.

Probable cause for entering the home was not proffered

to a neutral magistrate under oath (as would have been required to secure a search warrant). In the March 17, 2009, Memorandum, the Ninth Circuit found that "officers knew their informant had provided reliable information about different suspects in the past." Infra. That "this informant had a history of providing information about Garibay in particular, correctly directing authorities to his location when he had previously violated terms of his supervised release.... Finally, on the afternoon the warrants were executed, the officers took steps to ensure the informant's information was not stale." See, Case No. 07-10507; Ninth Circuit March 17, 2009, Memorandum at Page 3-4.

The agent apparently called the informant, who confirmed Garibay was present at the time that it was Garibay's vehicle parked in front of the house. Mr. Garibay argues that the entirety of the information concerning the communication between the agents and the informant were not disclosed or verified that these acts of communicating with the informant did occur. Assuming arguendo, if they did occur, any statements by the agents or the informant were not subject to any reliability test: No test was ever perfomed.

"Under Brady, the prosecutor's withholding of evidence favorable to the accused violates due process where the evidence is material either to guilt of innocence. Favorable evidence includes impeachment evidence." United States v. Brumel-Alvarez, 991 F.2d 1452, 1461 (9th Cir. 1992).

Impeachment evidence, as well as exculpatory evidence, falls within the Brady rule. See Giglio v. United States, 405 U.S. 150, 154, 31 L.Ed.2d 104, 92 S.Ct. 763 (1972).

Suppression of material evidence favorable to the accused requires reversal "irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. at 87.

However, nondisclosure of impeachment evidence does not result in automatic reversal. United States v. Bagley, 473 U.S. 667, 87 L.Ed.2d 481, 105 S.Ct. 3375 (1985). Rather, a new trial is required "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. at 682.

Whether the prosecution made any inducements, promises or advanced any gratuity in exchange for Jessica Rodriguez's testimony.

Mr. Garibay submits that he is unable to identify the entirety of the specific documents that would fall under Brady and Giglio material due to counsel Cheshire's failure to maintain Mr. Garibay abreast of the proceedings in his case. Mr. Garibay argues that the record is replete with inconsistencies, between Agent Graham, Jessica Rodriguez and Mr. Garibay's knowledge of the facts; facts that can be fully developed at an evidentiary hearing should this honorable Court Grant one.

The prosecution team is in the best position to answer what the prosecution team did and did not disclose. Mr. Garibay further submits that this honorable Court enter an Order directing Respondent to show cause why Mr. Garibay's request for an evidentiary hearing or relief should not be granted by this honorable Court.

GROUND THREE:   ATTORNEY CHESHIRE'S FAILURE TO PROVIDE HIS
FORMER CLIENT (MR. GARIBAY) WITH HIS CASE FILE VIOLATES MR.
GARIBAY'S SIXTH AMENDMENT RIGHT UNDER THE DUTY OF COUNSEL AND
MR. GARIBAY'S SUBSTANTIAL AND PROCEDURAL DUE PROCESS RIGHT
UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

The Sixth Amendment duty of counsel includes providing
former clients with the case file when the former client is
investigation claims of ineffectiveness in a post conviciton
relief action. Spivey v. Zant, 683 F.2d 881, 885 (5th Cir.
1982) (attorney is not entitled to refuse to disclose files in
response to formal request served by habeas corpus petitioner
who was former client of the attorney and who alleged a
violation of his Sixth Amendment right to assistance of
cousnel).

The Supreme Court of the State of California has
recently aptly described why the entire case file is essential
to a petitioner pursuing a post conviction relief action:

> [I]nvestigating potential habeas corpus claims
> and preparing an adequate habeas corpus petition
> [takes a substantial amount of time]. This
> is why: Before preparing the petition, counsel
> must consult with the petitioner and must
> review not only the trial record[] but also
> the police reports and trial counsel notes.
> In addition, habeas corpus counsel must
> investigate various factual and legal matters
> that may lead to potentially meritorious claims.
> In re Jimenez, ___ Cal.Rptr.3d ___, 2010 WL 3385999

(Cal.)(Cal. S.Ct. No. S167100, (8/30/10){Slip Opn. Page

5}(emphasis added).

A "client [is entitled to] access to documents or other tangible things created or amassed by his attorney during the course of the representation." Spivey, 683 F.2d at 885. Id.

However, a former client is "entitled to all protions of [that client's] file relevant to the proceedings in the district court." Spivey 683 F.2d at 885.

## GATEHRING DOCUMENTS AND TRANSCRIPTS

Mr. Garbay argues that the reason it is extremely important to gather all necessary and available documents, etc. will be to properly analyze issues and arguments of error and to discover all issues which may exist to properly plead in the motion. As a general rule, a criminal defendant has never been afforded an opportunity to review all the material obtained through discovery process by his/her attorney. Mr. Garibay advances a few prime examples why the documents will be necessary before preparing a post-conviction motion:

1. A report may show that the actual amount of drugs involved in the case was 1-kilogram of cocaine, but yet the sentence was based on 15-kilograms of cocaine, which resulted in a much harsher sentence;

2. A police report, DEA 6 report, or FBI report may show that the suspect in the case was 5' 11", weighed approximately 200 lbs., red hair, with a receding hair line (not fitting the accused's description);

3. The docket entry sheet should show all documents, motions and exhibits filed for record in your case, and you

may learn valuable information, which supports an ineffective assistance of counsel claim.

Here, a few prime examples can be shown, in example an accused's docket entry sheet may show that defense attorney never filed pre-trial motions for discovery or to suppress evidence (although counsel assured client the he/she had). The docket entry sheet may show that the jury sent a note to the court, while in deliberations, for further instructions, which went to a defendant's guilt or innocence, which would support a constitutional claim that the defendant was denied the right to be present at a critical stage of the trial, or that the defendant's attorney rendered ineffective assistance by failing to tell the defendant about the jury note, even though the defendant was waiting in the hallway of the courthouse. It could further show that the defendant's attorney did not know about the jury note and the court and prosecution discussed the note and submitted further instructions, without the defendant or the defendant's attorney's knowledge and presence, which may constitute a violation of the Sixth Amendment right to counsel at a critical stage of the proceedings, and a violation of the Fifth Amendment to be present;

5. The transcripts wil assist a defedant in finding errors during the course of the proceedings in the defendant's case, regardless as to whether the defendant's case is a guilty plea or trial. For example, if the defendant pleaded guilty, (a) the court may have failed to establish a factual basiss for the plea; (b) the court may have failed to insure that the plea was voluntary entered; (c) the court may have

failed to advise the defendant of the nature of the charge the defendant was pleading guilty to; (d) the court may have failed to advise the defendant of the minimum or maximum penalty provided by law. If the defendant's case was a trial, the transcripts could possibly show that his attorney conceded the defendant's guilt during opening arguments, allowed highly inflammatory inadmissable evidence in the defendant's trial without objection, failed to properly cross-examine witnesses, failed to call witnesses, failed to present evidence in the defendant's behalf, the indictment was constructively amended by proof at trial, or the defendant's attorney failed to request a curative or limiting jury instruction based on inadmissable evidence.

Likewise, the sentencing transcripts could show numerous errors made by the defendant's attorney, the court or the prosecution.

As a general rule, the defendant's previous attorney should have the majority of the documents that the defendant will need.

Mr. Garibay argues that counsel Cheshire has sporadically released several documents but has not released all material related to Mr. Garibay's case. Mr. Garibay submits that counsel Cheshire is in the best position to inform the honorable Court via affidavit which documents have been released and not released directly or indirectly to Mr. Garibay.

All documents in Mr. Garibay's case have not been accounted for, as a result divest Mr. Garibay from his right to raise all issues herein.

GROUND FOUR: THE PERJURY AND THE GOVERNMENT'S FAILURE TO
CORRECT PERJURED TESTIMONY RENDERS MR. GARIBAY'S TRIAL UNFAIR
AND VIOLATES MR. GARIBAY'S FIFTH AMENDMENT RIGHT TO DUE
PROCESS AND SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF
COUNSEL

THE LAW.

If a prosecutor uses perjured testimony or knowingly
fails to disclose that testimony used was false, then a
conviction must be set aside if "there is any reasonable
likelihood that the false testimony could have affected the
jury verdict." United States v. Endicott, 869 F.2d 452, 455
(9th Cir. 1989), citing, United States v. Bagley, 473 U.S.
667, 678-80, 87 L.Ed.2d 481, 105 S.Ct. 3375 (1985). See, Bonin
v. Vasquez, 807 F.Supp. 589 (1992 U.S. Dist. LEXIS 17381:
Central District of California)

Before a conviction can be set aside on the ground of
perjured testimony, the movant must show that the testimony
was perjured and the prosecuting officials knew at the time
such testimony was used, that it was perjured. United States
v. Reynoso-Ulloa, 548 F.2d 1329, 1340 (9th Cir. 1977) cert.
denied 436 U.S. 926, 56 L.Ed.2d 769, 98 S.Ct. 2820.

In the present case, Mr. Garibay argues that the
prosecution presented perjured testimony and allowed it to go
uncorrected. Mr. Garibay argues that the record obviates Mr.
Garibay's contention's that Jessica Rodriguez's, Agent Graham
and Agent Arellano's testimony are replete with
inconsistencies. Here, the government witness' testimony is
strikingly inconsistent to each other's testimony. Pursuant to
Ninth Circuit and U.S. Supreme Court law, Mr. Garibay "must"

demonstrate whether and how the tainted testimony prejudiced him.

The following are several excerpts of the record:

AGENT JOE H. GRAHAM'S IV SUPPRESSION HEARING TESTIMONY.

At the July 18, 2005, Suppression Hearing, Agent Graham testified that:

a.      When they opened the door the subject, Mr. Garibay was kind of propped up on his elbow, so I don't know if they had just been laying there, you know, relaxing or what they were doing, but they were fully clothed. SHT 17.

b.      That "there was a female that was with him that was lying just in front of him on the bed." SHT 18.

c.      That he "saw a gun lying on like top of a pile of clothes at the foot of the bed. So it wasn't actually on the bed, but there were a pile of clothes that were stacked up at the foot, and it was lying on top of those clothes, and I could see just the handle and part of the frame but not the entire handgun." SHT 25.

d.      That Garibay was closer to the wall behind Jessica on the bed. SHT 31.

e.      That Jessica told him a gun was under the bed. SHT 32.


AGENT JOE H. GRAHAM'S IV TRIAL TESTIMONY.

At trial, Agent Graham testified that:

f.      Mr. Garibay was behind, laying behind the female. TT 34.

g.      Jessica Rodriguez was in front of Garibay laying on the bed closer to the door and that both were fully

clothed. TT 35.

h.      That Garibay was behind her. TT 53.


JESSICA RODRIGUEZ'S TRIAL TESTIMONY.

i.      That she was on the side of wall. TT 70.

j.      She told Garibay to put the gun under the bed. TT 79.

k.      That Garibay put the gun under the mattress. TT 80.

l.      That she saw Garibay put the gun under the mattress they were sleeping in. TT 84-85.

m.      That her fingerprints would probably be on the gun. TT 96.

n.      Jessica denied putting the gun under the bed. TT 96.


AGENT BERNIE ARELLANO'S TRIAL TESTIMONY.

During trial, Agent Arellano testified that:

o.      Jessica told him (Arellano) that the gun had arrived to the house on Sunday, on the 5th of June. TT 113.

p.      That she (Jessica) thought her fingerprints would be on the gun. TT 113.

q.      That she (Jessica) put the gun under the bed or help Garibay unload the gun. TT 114.

s.      That she (Jessica) help unload the gun. TT 118.


Mr. Garibay submits that the trier of fact has a wide latitude in which witness to believe or disbelieve. United

States v. Clevenger, 733 F.2d 1356, 1359 (9th Cir. 1984). The jury is entitled to accept or reject the witness's testimony in whole or in part. Id. However, when the prosecution allows perjured testimony go uncorrected it deprives the jury from performing its duty as a finder of fact, and, in addition, violates Mr. Garibay's Fifth and Sixth Amendment to the United States Constitution.

"[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Augurs, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

Even a conviction based in part on perjured testimony or false evidence, presented in good faith, does not comport with notions of fundamental fairness guaranteed by the due process clause. See Hayes v. Brown, 399 F.3d 972, 980 (9th Cir. 2005).

Thus, when the government unwittingly presents perjured testimony, a reviewing court must determine whether "'there is a reasonable probability that [without all the perjury] the result of the proceeding would have been different.'" Killian v. Poole, 282 F.3d 1204, 1209 (9th Cir. 2002).

Ultimately, relief will depend on whether with the perjured testimony or false evidence petitioner received a fair trial. See Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). A violation will be found, and relief will be granted, by showing that the perjured testimony

or false evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. See Kyles, 514 U.S. at 435.

First, there are conflicting testimony as to who actually placed the gun under the under the bed or mattress. Second, there are three theories concerning potential gun locations. Third, Jessica Rodriguez admits that her fingerprints could possibly be on the gun insinuating her previous possession of the gun. Fourth, Agent Arellano apparently was given a different version of facts to those presented to the trial jury. Fifth, the gun's alleged arrival to the house. Here, there are two theories. Sixth, Mr. Garibay and Jessica's location on the bed. The record shows also two possible theories. Seventh, how many entries to the house. The agents testified that there were two entries to the house. In Mr. Garibay's appended affidavit, he asserts that Mr. Garibay witnessed that the agents entered the house three times, and on the third time the agents learned about a gun being on the premises. Further, a Federal Judge before had found that if the gun was in plain view the officers would have seized.

Mr. Garibay argues that his timely raised claims outline detailed reasons why this honorable Court should issue an Order Granting a "limited" or "full blown" evidentiary hearing for further factual development.

Near the end of trial, Assistant United States Attorney Tsethlikai stated, "I guess it really comes down to a credibility issue, which is a fact that should be determined by the jury...". TT 123. The prosecution argues correctly when

they argue that "credibility...should be determined by the
jury...". TT 123. However, the argument would mean very little
when the jury is deprived of all the facts, as in Mr.
Garibay's case.

The central point to Mr. Garibay's case is that
Counsel's pretrial performance failed to provide Mr. Garibay
with sufficient information to make a reasonably informed
decision about whether to accept a negotiated plea. See
Turner, 281 F.3d at 881 (counsel is required to give the
defendant the tools defendant needs to make an intelligent
decision); see also Blaylock, 20 F.3d at 1465 (where the issue
is whether to advise a client to accept a guilty plea, counsel
has "the duty to advise the defendant of the available options
and possible consequences") (internal quotation marks and
citation omitted). Instead, Mr. Garibay was deprived of his
counsel's assistance in making informed decisions. See Nunes
v. Mueller, 350 F.3d 1045, 1052 (9th Cir. 2003) (the Sixth
Amendment right to effective assistance of counsel guarantees
more than a fair trial; it protects the "reliability of the
entire trial process" including the plea bargaining process)
(citations and internal quotations omitted).

Mr. Garibay argues that because of counsel's errors in
his advice regarding the sentence Mr. Garibay was likely to
receive, Mr. Garibay was deprived of constitutionally
sufficient assistance of counsel before trial. Mr. Garibay
submits that he has satisfied the first prong of the
Strickland test.

The second prong of that analysis asks whether Mr.
Garibay was prejudiced by counsel's deficient performance. Mr.

Garibay must establish that there is a reasonable probability that, but for his counsel's deficient advice, he would have accepted a plea offer. Nunes, 350 F.3d at 1054; see also Turner, 281 F.3d at 879; Martinez v. Felker, Cv. No. 04-2960-MMM, 2009 U.S. Dist. LEXIS 11139, 2009 WL 393166, *15 (C.D. Cal., Feb 13, 2009).

Mr. Garibay argues that the second prong in this kind of case could be best resolved after conducting an evidentiary hearing. See Bedolla Garcia v. Runnels, No. C 02-5480-CRB, 2004 U.S. Dist. LEXIS 11990, 2004 WL 1465696, *1-*3 (N.D. Cal. June 24, 2004), aff'd, 143 Fed. Appx. 38 (9th Cir. 2005) (where counsel inaccurately advised petitioner regarding his maximum potential sentence if he elected to go to trial, court granted habeas relief after conducting an evidentiary hearing to ascertain whether the defendant "would have actually accepted the offer at the time or whether this is merely a self-serving statement based on hindsight").

Mr. Garibay submits that several sections of inconsistencies in testimony were left unchallenged by counsel Cheshire, Mr. Garibay's appended affidavit outlines incidents counsel Cheshire should have brought to the attention of the Court. Mr. Garibay argues that had counsel Cheshire properly advised Mr. Garibay, Mr. Garibay would have not proceeded to trail and taken the plea offer.

Aside from counsel's deficient advice, had Mr. Garibay known that counsel Cheshire was not going to present and challenge all the inconsistencies in the government's witnesses testimony, Mr. Garibay would had pleaded guilty to the 12-year plea offer.

CONCLUSION

Mr. Garibay submits that an evidentiary hearing is needed to evaluate the credibility gap between Jessica Rodriguez, Agent Graham, counsel Cheshire and Mr. Garibay. Mr. Garibay asserts that the introduction of his personal facts will unequivocally and vehemently elicit self-serving statements from Jessica Rodriguez, Agent Graham, and counsel Cheshire. Mr. Garibay argues that self serving statements on both sides should bear no particular indicia of reliability and treated as highly dubious. In his appended affidavit, Mr. Garibay presents examples of the "infirmities" in Agent Graham and Jessica Rodriguez's trial testimony, and further outlines counsel Cheshire's ineffective assistance. Mr. Garibay has demonstrated legitimate factual disputes requiring an evidentiary hearing. As stated under 28 U.S.C. § 2255(b), the Court must grant an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Thus, an evidentiary hearing is necessary where "the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." Leonti, 326 F.3d at 1116. Taking just one side of the story or one part of the testimony without illustrating the contradictions in the testimony is no t an accurate reflection of the facts of the case or how they were illustrated at trial or at the suppression hearing.

For the reasons stated above, Mr. Garibay respectfully requests this honorable Vacate Mr. Garibay's conviction, or in the alternative Grant an evidentiary hearing.

RELIEF REQUESTED

For the abovenamed reasons, Petitioner prays that this Court:

i.      Issue a writ of habeas corpus to have Petitioner brought before the Court to the end that he may be discharged from unconstitutional conviction;

ii.     Require Respondent to bring forth and file with the Court accurate and complete copies of all documents and proceedings relating to Petitioner's conviction and sentence;

iii.    Permit Petitioner to amend this Petition to include any additional claims or allegations not presently known to him, that are identified or uncovered in the course of review, discovery, investigation, and litigation of this habeas corpus petition;

iv.     Require Respondent to file an answer in the form prescribed by Rule 5 of the Rules Governing § 2255, admitting or denying each and every factual allegation set forth in this Petition;

v.      Permit Petitioner to conduct and utilize the procedures for discovery under Rule 6 of the Rules Governing § 2255, and Fed.R.Civ.P. 26-37, to the extent necessary to fully develop and identify the facts supporting this Petition, and any defenses thereto raised by Respondent's Answer;

vi.     Conduct an evidentiary hearing to resolve any factual disputes raised in relation to the claims in this Petition, by Respondent's Answer to this Petition, or by Petitioner's Response to any affirmative defenses raised in Respondent's Answer;

vii.    Allow Petitioner sufficient time to brief the issues of law raised by this Petition;

viii.    Issue a writ of habeas corpus to direct Respondent to release the Petitioner from custody, unless he is given  a new trial or new proceedings are conducted to cure all constitutional defects in the federal proceedings that resulted in Petitioner's present convictions; and

ix.    Grant such other and further relief as may be appropriate.

DATED this 29th day of December, 2010.

_____
Luis Enrique Garibay  pro se

VERIFICATION

I, Luis Enrique Garibay, the Petitioner state as follows:

a.    I am an incarcerated pauper in federal custody proceeding pro se in this habeas action; and

b.    Based on my first hand personal knowledge and my review of the federal court record, I know all the facts described in this Petition and Affidavit and verify them as true.

I swear under penalty of perjury (28 U.S.C. § 1746) that the foregoing is true and correct to the best of my ability.

DATED this 29th day of December, 2010 at the United States Penitentiary in Atwater, California.

_____
Luis Enrique Garibay, pro se

CERTIFICATE OF SERVICE

I, Luis Enrique Garibay, hereby certify that on December 29, 2010, I have served a true and correct copy, and additional copies, of the forgoing document(s): "Title 28 § 2255 Motion; Memorandum of Points in Support of 2255 Motion; Affidavit in Support of 2255 Moiton; Motion For Appointment of Counsel, and Motion to Proceed in Forma Pauperis," which is de emed filed at the time it was delivered to prison mail authorities for forwarding, see, Houston v. Lack, 101 L.Ed.2d 245 (1988), upon the below mentioned, by placing same in a sealed, first-class, postage prepaid envelope addressed to:

United States District Court

Evo A. DeConcini U.S. Courthouse

405 West Congress Street

Tucson, Arizona 85701

and deposited same in the United States Penitentiary Atwater Institutional Internal Legal Mail System at 1 Federal Way/P.O. Box 019001, Atwater, California 95301.

I declare under penalty of perjury (Title 28 U.S.C. § 1746), that the foregoing is true and correct to the best of my ability.

Luis Enrique Garibay

33